# UNITED STATES DISTRICT COURT

# FOR THE MIDDLE DISTRICT OF FLORIDA

## TAMPA DIVISION

ERICA GREEN,

               Plaintiff,

v.                                 Case No.: _8:23-cv-1039-TPB-AAS_

INTUIT, INC.,

               Defendant.

## COMPLAINT AND DEMAND FOR JURY TRIAL

The Plaintiff, Erica Green, ("Plaintiff") for her complaint against the Defendant Intuit, Inc. proceeds *pro se* and alleges as follows:

## NATURE OF THE ACTION

1. This action is brought forth for discrimination in employment on the basis of race, disabilities, and unlawful retaliation pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§2000e to 2000e-17 (race, color, gender, religion, national origin) and the Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§12112 to 12117. This action seeks to provide appropriate relief to the Plaintiff, Erica Green, who was adversely affected by the discriminatory conduct of the Defendant. The Plaintiff,

TPA 68516

Erica Green, contends that the Defendant, Intuit, Inc., has discriminated against her by terminating her employment because of her race, her disabilities, and because she exercised her rights under Title VII by filing a complaint of discrimination. This action is also asserting Florida law claims for libel and defamation as a result of the Defendant's publications of libelous and defamatory statements regarding the Plaintiff that are false, harmful, and offensive to the Plaintiff.

## BASIS FOR JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 as this is an action between a Plaintiff who is a citizen of Florida and a Defendant who is incorporated in the State of Delaware, and the amount in controversy exceeds seventy-five thousand dollars ($75,000). This action is authorized pursuant to Section 703 (a), 704 (a), of Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§2000e -2 (a), 2000e-3 (a), 2000e-5 (f) (1), 2000e-5(f)(3), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. §1981a.

3. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Middle District of Florida.

## PARTIES

4. The Plaintiff, Erica Green, is a citizen and resident of the State of Florida and resides at 4719 South Dawnmeadow Court, Plant City, Florida, 33566.

5. The Defendant, Intuit, Inc. is headquartered in Mountain View, California, and is incorporated under the laws of the State of Delaware.

6.  At all relevant times, the Defendant has continuously been and is now doing business in the State of Florida and has continuously had at least fifteen (15) employees.

7.  At all relevant times, the Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701 (b), (g) and (h) of Title VII, 42 U.S.C. §§2000e-(b), (f), (g), and (h).


## ALLEGATIONS

8.  The Plaintiff, Erica Green, is a Black, African-American Female that suffers from disabilities that include chronic, severe Asthma and Migraines with Aura. The Plaintiff's conditions significantly limit her daily living activities by impairing her vision limiting her ability to see and impairing her lungs limiting her ability to breathe.

9.  The Plaintiff is a former employee of the Defendant, and worked as an Intuit Seasonal Tax Associate where she primarily assisted customers with the preparation of their tax forms, assisted customers of the Defendant through the chat widget on TurboTax.com, handled telephone engagements, attended staff meetings, provided technical troubleshooting, conducted research, and the Plaintiff maintained up to date information of new tax laws through the continuing education programs provided by the Defendant.

10. The Plaintiff was originally hired to work for the Defendant on February 5, 2021. Plaintiff was rehired on August 27, 2021 to be employed for a second tax season for the Defendant.

11. During the Plaintiff's employment with the Defendant the Plaintiff was highly ranked and the Plaintiff was consistently awarded for her performance.

12. During Plaintiff's employment Intuit provided her with a reasonable accommodation by allowing the Plaintiff to use Pre-Approved Sick Time and Supplemental Sick Time at her discretion and the use of a double monitor.

13. During the Plaintiff's employment with the Defendant mandatory one on one staff meetings were required to be had with the manager every two weeks to discuss performance.

14. During the Plaintiff's employment with the Defendant mandatory team staff meeting were required to be had with the manager and members of the assigned team weekly to discuss Wildly Important Goals.

15. On February 6, 2022 at 3:00 P.M Plaintiff had a biweekly staff meeting with her former manager Janis Longbottom to discuss the Plaintiff's performance and the Plaintiff received complimentary positive performance review ratings.

16. Plaintiff informed her former manager, Ms. Longbottom that some customer engagement cases were missing from the Plaintiff's caseload and phone calls and customer engagements were not being reported correctly. Janis Longbottom confirmed that there was a problem within the organization with the case reporting software reporting the correct information for multiple team members and colleagues within the company.

17. During the February 6, 2022 staff meeting the Plaintiff was not made aware of any allegations or concerns and the Plaintiff received positive comments from her manager and customers of the Defendant that commended the work performed by the Plaintiff.

18. The following day on February 7, 2022 the Plaintiff was awarded a Spotlight Award for her stellar performance and the Plaintiff's former manager Janis Longbottom sent an email commending the work performance of the Plaintiff and the Plaintiff was presented

with a two (2) Spotlight Awards of $25.00 with the Spotlight Award totaling a $50.00

Amazon gift card for her work performance.



19. The night of February 7, 2022 after the Plaintiff received the Spotlight Award for her

performance she then received a communication via email requesting a meeting from the

Defendant's Ethics and Investigations team member Angelica Ponce.

20. On Tuesday, February 8, 2022 at 5:30 PM- 6:00 PM Plaintiff attended a meeting via the Zoom Application with the Defendant's Ethics and Investigations Team and the Plaintiff was interviewed by an individual by a member of the Ethics and Investigations Team Investigator, Angelica Ponce.

21. During the February 8, 2022 meeting with the Defendant's Ethics and Investigations Team the Plaintiff was presented with numerous false allegations and the Defendant accused the Plaintiff of claiming sick time on a day the Plaintiff was not scheduled to work, the date of January 18, 2022.

22. The Plaintiff contends that she was scheduled to work on January 18, 2022. In fact, The Plaintiff had two separate shifts to work for the Defendant on January 18, 2022 with the first shift beginning at 10:00 A.M. and ending at 3:00 P.M. and the second shift began at 8:00 P.M. and ended at 8:00 P.M.



23.  The Plaintiff categorically denied each and every allegation made by the Defendant and the Plaintiff provided proof that the allegations being made were false according to the evidence provided by the reporting of Intuit's screen capturing tools as the Plaintiff presented the schedule for January 18, 2022 that showed the Plaintiff was scheduled to work on January 18, 2022.

24. The Plaintiff was placed under investigation.

25. During the investigation the Plaintiff made a complaint of discrimination to the Defendant through the Defendant's HR Connect Department and the Plaintiff was given the Intuit HR Connect Case Number: 00722294.

26. On February 14, 2022 the Plaintiff received an email from her former manager, Janis Longbottom, informing her that The Defendant's committee on Ethics Investigations and Awareness Team found the severity of the issues they determined to be high, and immediately terminated the employment of the Plaintiff and the reason for the termination was due to the Plaintiff's performance because the Defendant's investigation concluded that the Plaintiff reported hours worked when no productive work was performed.

---------- Forwarded message ----------
From: **Longbottom, Janis** <Janis_Longbottom@intuit.com>
Date: Mon, Feb 14, 2022, 1:58 PM
Subject: Termination
To: Ekgreen87@gmail.com <Ekgreen87@gmail.com>
Cc: Green, Erica <Erica_Green1@intuit.com>

Good Morning Erica,

I did attempt to call your phone but the call went to voicemail.

The Ethics Committee has decided to terminate your employment.

- As you know, our investigations team looked into concerns regarding your reporting time worked when no productive work was performed.
- The team conducted a thorough investigation, including two (2) interviews, review of data from Workday, IEP, Amazon Connect, training tool, and e-mail/slack communications.
- The team concluded that you did report hours worked when no productive work was performed.
- In deciding on corrective action, if any, we use guiding principles, which include: (1) the severity of the conduct at issue, (2) your conduct during the investigation, (3) your level of accountability and ownership of the concerns and issues brought to our attention, and (4) your ability to lead differently and sustainably in the future, if necessary.
- Here we found the severity high
- Based on this assessment, the Committee on Ethics Investigations and Awareness has decided to terminate your employment

27. The aforementioned statement is inconsistent with the reason for termination the

Defendant stated in its Position Statement to the EEOC in which the Defendant stated

that the reason for the termination of the Plaintiff's employment was because the Plaintiff

was falsely accused of using supplemental sick leave on a day she was not scheduled to

work. The Plaintiff has continued to state that she was scheduled to work on the day in

question. The defendant stated the reason for the termination of the Plaintiff's

employment was because they accused the Plaintiff of taking" supplemental sick leave on days she was not scheduled to work, Intuit terminated her employment for time theft."

28. The Defendant's response in its EEOC Position Statement is in direct contradiction to its email communication stating that the reason for the Plaintiff's termination of employment was due to work performance. In the defendant's original email communication informing the Plaintiff that she was terminated from her position the Defendant stated the reason for termination was because the Plaintiff was accused of reporting, " ....hours worked when no productive work was performed. "

29. The Plaintiff contends that she was scheduled to work on January 18, 2022.

30. The Plaintiff contends that similarly situated individuals outside of her protected classes that were white coworkers that did not have disabilities were treated more favorably than the Plaintiff because the other employees remained employed with the Defendant while the Plaintiff was singled out and was the employee that was terminated.

31. On February 16, 2022 the Plaintiff filed a formal grievance with the Defendant citing discrimination.

32. The Defendant never responded to the Plaintiff's formal grievance and the Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on May 31, 2022.

33. The Defendant submitted a Position Statement to the EEOC on August 9, 2022 in which the Defendant stated "This response is based on Intuit's understanding of the facts at the present time. By submitting this response, Intuit in no way waives its right to present new or additional facts, arguments, or defenses based on subsequently acquired information.

Additionally, the response does not constitute an affidavit and may not be used in any manner, including as evidence or for discovery purposes, for impeachment or otherwise, in any subsequent proceeding, pursuant to 42 U.S.C. § 2000e-5(b) and Rule 408 of the Federal Rules of Evidence, or in any administrative or judicial proceeding in connection with this complaint or any other matter. Intuit stands ready to continue to cooperate in the investigation of this matter and will promptly respond to requests, through counsel, for relevant information in connection with your investigation. Notwithstanding the foregoing, nothing herein is intended to be nor shall be construed as a waiver of any privileges, including, but not limited to, the attorney-client privilege."

34. 42 U.S.C. § 2000e-5(b) states, "If the Commission determines after such investigation that there is reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion. Nothing said or done during and as a part of such informal endeavors may be made public by the Commission, its officers or employees, or used as evidence in a subsequent proceeding without the written consent of the persons concerned."

35. Upon information and belief, the Defendant's Position Statement is not privileged communication or an attorney work product. 42 U.S.C. § 2000e-5(b) pertains to statements made during efforts of "conference, conciliation, and persuasion." The Defendant's Position Statement denied discrimination against the Plaintiff and gave alternate reasons for the termination of the Plaintiff's employment and does not constitute conciliation evidence. In fact, the Defendant's only insinuation to conciliation was its request to the EEOC to issue a No Cause finding and dismiss the Plaintiff's charge; there

was never any mention of a settlement offer, mediation, or conversation. It is firmly believed in good faith that 42 U.S.C. § 2000e-5(b) does not apply to the Defendant's Position Statement. *Olitsky v. Spencer Gifts, Inc.*, 964 F.2d 1471, 1477 (5th Cir. 1992)

36. The Defendant's Position Statement is also not a work product. A work product is an attorney's preparation for a case, reflected in "interviews, statements, memoranda, correspondence, briefs, mental impressions, and personal beliefs," among other things.  It does not reflect the attorney's attempts to process her legal theories and strategies free from interference. The Defendant's Position Statement is not an exchange of notes or mental impressions between the Defendant's attorneys and the EEOC and upon information and belief the Position Statement should not be restricted from disclosure. *Hickman*, 329 U.S. at 511

37. The Defendant's Position Statement proves that the Defendant's statement of alleged non-discriminatory reasons for making a decision is false or "pretext" because the Position Statement shows that the Defendant's explanation had substantially changed over time. *Jones v. National American University*

38. The Defendant also stated Rule 408 of the Federal Rules of Evidence. Rule 408 of the Federal Rules of Evidence states that, " inadmissible evidence includes conduct or a statement made during compromise negotiations about the claim — except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority. Exceptions are that the court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a

criminal investigation or prosecution." The Position Statement does not contain any

negotiations or compromises and therefore should be considered admissible in Court.

39. The Plaintiff alleges that the Defendant's Position Statement is relevant to show

inconsistent reasons given by the Defendant for the Plaintiff's termination.

40. According to the Federal Rules of Civil Procedures 26 (b) (1) "parties may obtain

discovery regarding any nonprivileged matter that is relevant to any party's claim or

defense and proportional to the needs of the case....Information within this scope of

discovery need not be admissible in evidence to be discoverable."

41. The Defendant stated that" Ms. Green reported and was paid for 24.81 hours of work,

when Intuit's productivity data established that she had only worked 7.3 hours"

42. The Plaintiff alleges 20 hours of mandatory training and continuing education on tax law

that the Defendant required to be completed that was due on 3/31/2022 was conveniently

not accounted for, although the Plaintiff completed the training in less than the time

provided and the 7.3 hours the Defendant states that the Plaintiff was "In Production"

was in fact the time the Plaintiff spent on the Phone and having live Face to Face

interactions with the Defendant's customers and does not include any of the hours the

Plaintiff spent providing service for chat customer engagements of the Defendant's chat

feature on its website.

43. The Defendant's Position Statement contains multiple false and defamatory statements

about the Plaintiff.

44. The Defendant's Position Statement contains the false and defamatory statement that

"Intuit interviewed Ms. Green and provided her with the opportunity to produce evidence

in her defense, but she failed to do so.

45. The Plaintiff produced evidence in real time that proved the allegations of the Defendant to be false by submitting schedules proving that she was scheduled to work on January 18, 2022 and other days that were in question.

46. The Defendant's Position Statement contains the false, defamatory, and malicious statement that "Ms. Green acknowledged that the sick time she entered on January 18th was incorrect, but alleged she entered it in error. Furthermore, Ms. Green was unable to explain the gap in the hours she reported versus those she actually worked according to Intuit's productivity data"

47. The Plaintiff acknowledged that she entered Unplanned Time Off on the day she was scheduled to work on January 18, 2022. The Plaintiff produced evidence to the Defendant via communication to the Defendant's Ethics and Investigations Department through the Slack messaging application that proved the allegations of the Defendant to be false because the evidence provided showed that the Plaintiff was scheduled to work on January 18, 2022.



48. The Plaintiff explained that the gap in the hours she reported versus the hours she worked according to Intuit's productivity data was due to the Plaintiff not receiving credit or acknowledgement for hours worked providing service to the Defendant's customers through chat engagements, the Plaintiff had missing customer engagements from the Plaintiff's case files, and the Plaintiff also did not receive any credit for completing the Defendant's mandatory 20 hours of continuing education training that was required to be completed by March 2022.

49. The Defendant terminated the Plaintiff despite receiving evidence that the allegations made against the Plaintiff were categorically false.

## DISCRIMINATION

50. Plaintiff repeats and realleges by reference the allegations in paragraphs 1 through 49 as if fully set forth herein.

51. The Plaintiff alleges that The Defendant discriminated against her based on race, color, disability, and retaliation.

52. It is the Plaintiff's best recollection that she filed a charge with the Equal Employment Opportunity Commission under charge number 488-2022-00524 regarding the Defendant's alleged discriminatory conduct on February 8, 2022 and February 8, 2022.

53. The Equal Employment Opportunity Commission issued a Notice of Right to Sue letter to the Plaintiff on March 17, 2023.

54. To establish a prima facie case through circumstantial evidence the Plaintiff must demonstrate that (1) she belongs to a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) similarly situated individuals outside the protected class were treated more favorably. Holifield v. Reno, 115 F.3d 1555, 1561-62 (11th Cir. 1997).

55. The Plaintiff belongs to several protected classes; The Plaintiff is a Black, African-American Female that suffers from migraines and asthma which are conditions that are considered disabilities by the Americans with Disabilities Act.

56. The Plaintiff was qualified for the position as she received positive performance reviews from her manager and the customers of the Defendant and was even presented with multiple awards for her work performance.

57. The Defendant stated in its Position Statement to the EEOC that the Plaintiff was not terminated from her employment due to performance.

58. The Plaintiff suffered adverse employment action because she was terminated from her employment.

59. Similarly situated individuals outside the protected class were treated more favorably as other employees remained employed as the Plaintiff was singled out and was terminated.

60. It is upon information and belief that Non-Black employees were not similarly terminated for the same infractions the Plaintiff was accused of.

61. It is upon information and belief that the other employees were White without Disabilities and the Plaintiff was singled out based on her protected classes.

62. The Plaintiff identified the names and contact information of four Non-Black employees that were not similarly terminated in her EEOC Charge of Discrimination.

63. The Plaintiff contends that the Defendant's employment practices resulted in unlawful employment discrimination against the Plaintiff with respect to compensation opportunities by the Defendant limiting the Plaintiff's growth opportunities, denying bonuses, and offering fewer professional opportunities than the Plaintiff's Non-Black counterparts.

64. The EEOC conducted an investigation and issued the Defendant a Request for Information. Ironically, the Defendant objected to the EEOC's Request for Information.

65. Although the Defendant has stated that the Plaintiff was terminated for Timecard Fraud, the Defendant failed to provide the Timecard when the EEOC requested to see the Timecard during the EEOC's investigation. Rather than fully cooperating with the investigation of the EEOC, the Defendant conveniently stated that the request for the Timecard was to "overbroad" a request for them to comply with the simple EEOC request.

66. The EEOC issued the Plaintiff a Notice of Right to Sue on March 17, 2023.

67. The circumstances described above give rise to an inference of discrimination.

## **RETALIATION**

68. Plaintiff repeats and realleges by reference the allegations in paragraphs 1 through 67 as if fully set forth herein.

69. Since at least February, 2022, the Defendant has engaged in unlawful retaliatory practices in violation of Section 704 (a) of Title VII, 42 U.S.C. §2000e-3(a) by terminating the employment of the Plaintiff because she reported the Defendant's discriminatory practices to the Defendant's HR Connect department and received the Intuit HR Connect Case Number: 00722294.

70. The effect of the aforementioned events has been to deprive the Plaintiff of equal employment opportunities in retaliation for exercising her federally protected rights.

71. The unlawful employment practices described above were intentional.

72. The unlawful employment practices described above were done with malice or with reckless indifference to the federally protected rights of the Plaintiff.

## **LIBEL**

73. Plaintiff repeats and realleges by reference the allegations in paragraphs 1 through 72 as if fully set forth herein.

74. Upon information and belief, the Defendant published the statement "Ms. Green had taken eight (8) hours of supplemental sick leave on January 18, 2022, when she was not scheduled to work."

75. Upon information and belief, the Defendant was subjectively aware of the probable falsity of the aforementioned statement as Intuit has access to its own scheduling programs and previous records as well as current records of its own employees work schedules. The Defendant's own scheduling software program clearly shows that the Plaintiff was scheduled to work an 8 hour shift beginning at 9:00 A.M. in the morning.

76. Upon information and belief, the Defendant was subjectively aware of the probable falsity of the aforementioned statement because the Defendant's own scheduling records shows that the Plaintiff was scheduled to work that entire week including the date of January 18, 2022.

77. Upon information and belief, the Defendant published the statement that the Defendant "provided her with the opportunity to produce evidence in her defense, but she failed to do so."

78. Upon information and belief, the Defendant was subjectively aware of the probable falsity of the aforementioned statement as the Plaintiff messaged the Defendant's Ethics and Investigations Department through the Slack Application Program and provided evidence in her defense which included the schedule that contained the time the Plaintiff was scheduled to work on January 18, 2022.

79. Upon information and belief, the Defendant published the statement "defrauded Intuit by falsifying her time records and abusing Intuit's supplemental sick leave policy."

80. Upon information and belief, the Defendant was subjectively aware of the probable falsity of the aforementioned statement as the Defendant approved all supplemental sick time and furthermore, even confirmed with the EEOC that all sick time was approved.

81. Upon information and belief, the Defendant published the statement "the investigation revealed that Ms. Green had falsified her time records and taken supplemental sick leave on days she was not scheduled to work, Intuit terminated her employment for time theft. This decision was based entirely on Ms. Green's substantiated misconduct and made pursuant to Intuit's uniformly enforced policies."

82. Upon information and belief, the Defendant was subjectively aware of the probable falsity of the aforementioned statement as the Defendant originally stated the reason for termination was due to the following reason, "our investigations team looked into concerns regarding your reporting time worked when no productive work was performed. The team conducted a thorough investigation, including two (2) interviews, review of data from Workday, IEP, Amazon Connect, training tool, and e-mail/slack communications. The team concluded that you did report hours worked when no productive work was performed."

83. The inconsistent statements for the reasons the Defendant terminated the Plaintiff

84. Upon information and belief, the Defendant published these false statements to multiple outlets via email, the Slack messaging application, the EEOC portal, and US Mail and other outlets.

85. As set forth above, the statements made contain false, defamatory, and libelous statement regarding Plaintiff, including that the Plaintiff falsified records.

86. None of the aforementioned statements about the Plaintiff are true.

87. Upon information and belief, the Defendant knew these statements to be false at the time they respectively published them or acted with reckless disregard of whether they were true or not.

88. Upon information and belief, the Defendant was subjectively aware of the probable falsity of the aforementioned statements at the time they published the statements.

89. Upon information and belief, these actions constitute actionable libel per se under

90. Upon information and belief, the Defendant's false and defamatory statements were disparaging and have produced damage to Plaintiff's character and reputation.

91. The aforementioned defamatory statements made and published by the Defendant have caused the Plaintiff to suffer humiliation, embarrassment, mental anguish, and emotional distress.

92. The aforementioned defamatory statements made and published by the Defendant have also caused damage to the Plaintiff's reputation and character with her profession with prospective business relations.

93. Upon information and belief, the actions of the Defendant constitute libel.

94. Upon information and belief the actions set forth in this Complaint demonstrate defamation and malice.

95. The Plaintiff is entitled to damages for the following harm: emotional distress and impairment to her character and reputation.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully requests the Court to enter judgment in her favor and against the Defendant, as follows:

a) Awarding the Plaintiff damages in amounts to be determined at trial, but not less than $75,000, including general, special, consequential, actual, statutory, punitive damages

and legal fees beyond and in excess of those damages necessary to compensate Plaintiff

for injuries resulting from the Defendant's conduct.

b) The Plaintiff requests an order permanently enjoining the Defendant and all their

respective agents, officers, employees, representatives, and attorneys from making or

publishing statements that the Plaintiff falsified records.

c) Granting the Plaintiff other relief that the Court deems just and proper.

## **JURY TRIAL DEMANDED**

The Plaintiff hereby demands a trial by jury on all claims for relief and issues triable by a

jury.

Respectfully submitted,

Erica Green

(Plaintiff in Pro Per)

4719 South Dawnmeadow Court

Plant City, Florida  33566

(813) 502-7289

Ekgreen87@gmail.com

## **Certification and Closing**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my

knowledge, information, and belief that this complaint: (1) is not being presented for an improper

purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or

reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date: _May 11, 2023_

Erica Green

(Plaintiff in Pro Per)

4719 South Dawnmeadow Court

Plant City, Florida   33566

(813) 502-7289

Ekgreen87@gmail.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the attached document has been furnished

to Intuit, Inc., the Defendant, and via any others listed for service on this _____ day of

_____, 2023.

Date: _____

Erica Green

(Plaintiff in Pro Per)

4719 South Dawnmeadow Court

Plant City, Florida  33566

(813) 502-7289

Ekgreen87@gmail.com